# Henry Yelverton *et al. versus* Peter E. Burton.

The Act of Assembly of 9th April, 1849, exempting $300 from levy and sale, does not operate in favour of defendants subject to be sued by foreign attachment.

*Quære,* Whether the wife, in the absence, and without the express authority of her husband, can make a valid demand of exemption of property from levy and sale under Act of 9th April, 1849.

Among attaching creditors, when process is served the same day, there is no preference, and all must be paid *pro rata.*

ERROR to the Court of Common Pleas of *Erie county.*

This was an action on the case against Peter E. Burton, sheriff of Erie county, for neglect of duty.

Isaac H. Case, formerly a merchant, absconded from Girard, Erie county, about the 10th September, 1850. On the 20th of September, 1850, a writ of *fi. fa.* in favour of Wm. Case against said Isaac H. Case, was placed in the sheriff's hands. On the 23d September, 1850, Yelverton et al. commenced suit against Isaac H. Case, by foreign attachment. Other writs of attachment had preceded the one of Yelverton's. Judgments were obtained upon all at the third term. On the 1st of September, 1850, Isaac H. Case's wife left and went to the state of New York. About the time the sheriff was proceeding to sell the property so levied on and attached, the said Case's wife in company

[Yelverton *v.* Burton.]

with her brother-in-law and uncle, both residents of the state of New York, came to Girard when the goods were about to be sold, and Mrs. Case demanded of the sheriff $300 in value of the property so levied and attached, under Act of 9th April, 1849. The sheriff appointed appraisers, and delivered over to Mrs. Case goods so levied and attached to the amount of $290.39, and she with her friends immediately returned to the state of New York, where she remained.

The plaintiffs, *inter alia*, requested the court to charge the jury as follows :—

2. If the jury believe from the evidence, that the defendant set off or delivered over to the wife of Isaac H. Case, a part of the goods attached and taken by him upon the said writ of the plaintiffs, after the same were so attached by the defendant, the plaintiffs are entitled to recover the value of the goods so taken and delivered to the wife of the said Isaac H. Case.

4. The right to claim $300 by a defendant in an execution under the Act of Assembly, exempting certain property from levy and sale, is a personal right, and cannot be exercised by any person other than the debtor himself, or his attorney, *specially* authorized to claim the right.

5. Isaac H. Case, if he had been present in person, had no right to demand and receive to the value of $300, out of the property attached on the plaintiff's writ, he being a non-resident of the state.

The court, GALBRAITH, P., answered the second point in the negative; and to the 4th and 5th points, say, "If all had been disclosed at the time the appraisement was allowed, that appears now, writs of foreign attachment prosecuted to final judgment without objection by the defendant, or it was otherwise clear that Isaac H. Case was a non-resident, and the proper subject of foreign attachment, I think he would not be entitled to the exemption under the Act of 1849. But you must transfer yourselves back to the time when the sheriff was required to act. Case had been absent but a few weeks; had been quite recently a resident; had a home, a wife, and was doing business as any other citizen of Girard. Had he presented himself there, and claimed the property exempted by law from that levied on the execution in the sheriff's hands, and complied with the requisitions of the Act of 1849 in other respects, he would have induced a prudent man to pause ; and if so, the sheriff would be justified in requiring an indemnity from the plaintiff—just as in the case of a claim by another person than the defendant, of property in possession of the defendant, on an execution, and if the sheriff notified the plaintiff of the claim, and he refused or neglected to tender indemnity, the sheriff would not be liable.

"The right to claim $300 as exemption from sale on an execution under the Act of 1849, is a personal one, and cannot be

[Yelverton v. Burton.]

exercised by any person other than the debtor himself, or some one authorized to claim that right. But we say further that the wife of a defendant in an execution, who happens to be absent on business or otherwise lawfully, when the officer comes with the execution to make a levy and sale, is authorized to claim the right of exemption."

The jury rendered a verdict for the defendant.

The answers of the court to plaintiff's points were the errors complained of in this court.

*Marshall*, for plaintiffs in error, as to the authority of the wife to claim the exemption in the absence of her husband, cited Webster v. McGinnis, 5 *Binney* 235 ; Leeds v. Vail, 3 *Harris* 185 ; Alexander v. Miller et al., 4 *Harris* 215 ; 2 *Roper, Husband &amp; Wife*, 110–11. He also cited Nagle v. Stroh, 4 *Watts* 124 ; Estler v. Estler, 1 *Bro.* 322 ; Miller v. Commonwealth, 5 *Barr* 294 ; Duncan v. Kilheffer, 5 *Watts* 141 ; Miller's Appeal, 4 *Harris* 300 ; Weaver's Appeal, 6 *Harris* 307.

*Babbitt*, for defendant in error.

The opinion of the court was delivered by

WOODWARD, J.—This is an action against the sheriff of Erie county, for not executing a writ of foreign attachment, issued by the plaintiffs against one Isaac H. Case, according to law. The foreign attachment issued by the plaintiffs, as well as a similar writ issued on the same day, at the suit of Freeman Patterson, were laid upon a store of goods at Girard, in said county, on the 23d day of September, 1850, and thenceforth the goods were bound by the writs, and were in the sheriff's custody to answer and abide the judgment of the court: 50th sec. of Act of 30th June, 1836. But previously to the issuing of these writs the sheriff had levied on the same goods by virtue of a *fi. fa.* issued the 20th September, at the suit of William H. Case v. Isaac H. Case, and subsequently, to wit, on the 26th September, 1850, he received and levied the execution of Jonathan Hempstead v. Case on the same goods. Before the sale under these executions, which occurred on the 23d day of October, 1850, the wife of the defendant Case returned to Girard and claimed an exemption of goods to the value of $300, which the sheriff allowed, and they were appraised and set off to her. This is the principal matter complained of by the present plaintiffs, and the question to be considered is whether foreign attachments, well issued and laid, are subject to the exemption law of 9th April, 1849. I do not see that this question is affected by the foreign attachment standing between the two *fi fa.'s*. As to them, the defendant would be entitled to exemption beyond controversy, for they are within the

[Yelverton *v.* Burton.]

very letter of the statute, but holding the goods not only by the levies on the *fi. fas.*, but also by virtue of the foreign attachments, the sheriff was bound to resist the demand for the exemption if the statute, do not give it as against an attaching creditor. The words of the act are, that " property to the value of three hundred dollars, and no more, owned by or in possession of any debtor, shall be exempt *from levy and sale on execution or by distress for rent.*" It has been said that the act does not apply to a *levari facias* on a mortgage (Morgan *v.* Nowell, 4 *Am. Law Journal*, 180), nor to an attachment execution (Vezia *v.* Viench, 8 *Leg. Int.* 54), and we think it inapplicable to foreign attachments. They are not execution process, and therefore not' within the words of the act. And as the Act of 1836 extends the effect of attachments to *all* the goods seized, it is difficult to see how a sheriff can justify himself for surrendering part of them to the defendant. It required an express legislative provision to prevent *domestic attachments* from seizing exempted property (see *Purdon*, title *Domestic Attachment*, p. 260, pl. 24), but no such restraint has been imposed on foreign attachments, and the legislature having made the discrimination, it is not for us to disregard it.

But debtors subject to foreign attachment are no more within the *spirit* of the exemption law of 1849 than they are within its *letter*. We do not legislate for men beyond our jurisdiction, and certainly not for absconding debtors ; but the Act of 1849 was designed for our own citizens—for the families of the poor who are *with us*—that the rapacity of creditors might not strip them of every comfort and convenience. The primary object of the process of foreign attachment is to compel the appearance of the debtor, and if it fail of this purpose—if he will not come within our jurisdiction to answer to his liabilities—let him not come to appropriate our bounties.

The sheriff then was wrong in listening to a demand of exemption when he held the goods in foreign attachment, and we see nothing in the conduct of the plaintiffs or their attorney to excuse his error. The testimony is that " Mr. Marshall (the attorney) did not assent or dissent to Mr. Case's taking the goods." Nor was he required to do so. He had issued the writ his clients' case demanded, and the sheriff was bound to execute it according to law. The Act of Assembly furnishes all the instructions he needed, and if, in the circumstances he was placed, he felt the want of indemnity, he should have demanded it. True, if he had refused the exemption and it had turned out the defendant was entitled to it, he would have exposed himself to an action from that quarter, as he has now from the other, for granting the exemption improperly ; but this is a dilemma into which the office of sheriff, from the nature of its duties, frequently brings its holder ; and as

there is no mode, by application to the court or otherwise, in which he can extricate himself, his only resource is to obtain indemnity from both parties, if necessary, before he proceeds. In this view of the principal point, it becomes unnecessary to consider the bills of exception to evidence, or the capacity of Mrs. Case to make a valid demand of exemption in the absence of her husband and without his express authority. Whether she was qualified or not, the exemption was improperly allowed, and the sheriff became liable for the consequences, and so the jury ought to have been instructed.

The plaintiffs' sixth point might have been denied without a qualification. The attachments went into the sheriff's hands and were served on the same day, and we decided at Harrisburg, in 1854, that as among attachment creditors where process is thus served there is no preference resulting out of fractions of a day. Of course the plaintiffs were not injured by the sheriff's serving Patterson's attachment first, or if they were, the injury occurred by the court in the matter of distribution, and not by any misfeasance of the sheriff.

To the extent of the exemption allowed to Mrs. Case, the plaintiffs seem to have had a good cause of action against the sheriff, and therefore the judgment is

Reversed, and a *venire de novo* awarded.